Homer C. **SPRING, Individually and as Administrator of the Estate of Ronald L. Spring, and Paulette S. Spring, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 93–1060–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 19, 1993.

Richard K. Willard, Thomas M. Barba, Steven K. Davidson, Steptoe & Johnson, Washington, DC, for plaintiffs.

Gary W. Allen, Director, Robert A.K. Doehl, Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, DC, Frank W. Hunger, Asst. Atty. Gen., Helen F. Fahey, U.S. Atty., Richard Parker, Asst. U.S. Atty., Alexandria, VA, for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

### I.

The motion at bar presents the question of what state law to apply in Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, cases, when the act of negligence and the accident resulting from the negligence occur in two different states. Also presented is whether the choice of law rule for the substantive issues operates also to determine the appropriate remedies or measure of damages. For the reasons set forth here, the doctrine of *lex loci delicti* controls substantive issues, while the doctrine of *lex fori* controls matters relating to remedies. And more specifically, the nature of damages available under wrongful death statutes, including parents' inability to recover nonpecuniary losses for the death of adult children, are substantive issues analyzed under *lex loci delicti.*

### II.

On October 21, 1988, a single-engine Piper PA–28 aircraft flown by plaintiffs' decedent, Ronald L. Spring, crashed into the Blue Ridge Mountains at Gambrill State Park, Maryland.[1] Decedent, a licensed pilot, was returning to Frederick, Maryland from a flight to Louisville, Kentucky. After being cleared for his final approach into Frederick, decedent wandered off the published approach procedure and crashed.

Plaintiffs claim that negligence of the air traffic controllers at Dulles International Airport ("Dulles Approach") and at Baltimore–Washington International Airport ("Balti-

---

1. Decedent, a resident of Pennsylvania, was the plaintiffs' adult child.

more Approach") proximately caused decedent's fatal accident. Specifically, plaintiffs allege that in the course of decedent's descent into Frederick, instruments at Dulles Approach and at Baltimore Approach indicated that decedent was flying off-course and that controllers in both locations negligently failed to observe and respond to this information. Baltimore Approach cleared decedent for an Instrument Landing System (ILS) approach and acknowledged decedent's report of his inbound procedure turn, even though shortly before this acknowledgement Baltimore Approach's screen indicated decedent was flying significantly off-course. And, despite receipt of numerous visible and audible Minimum Safe Altitude Warning alarms pertaining to decedent's aircraft, Dulles Approach did not attempt to initiate communications with decedent or to alert other Federal Aviation Administration (FAA) facilities of the danger to decedent.[2] Because the air traffic controllers were federal employees acting within the scope of their employment, plaintiffs brought suit under the FTCA.

In the motion at bar, the government asks that Maryland's state law be designated as controlling in this matter. Plaintiffs oppose this motion, arguing that Virginia law applies. This choice of law dispute matters because Maryland's wrongful death statute limits the recovery of parents for the death of an adult child to pecuniary loss,[3] while Virginia's wrongful death statute contains no such limitation.[4]

### III.

In allowing certain claims to be asserted against the United States, the FTCA specifies that these claims be determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The Supreme Court has interpreted this language to mean that in multistate FTCA actions, courts must apply the whole law of the state where the negligent or wrongful acts occurred. *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). *Richards* teaches that the whole law includes choice of law rules. But left unanswered by *Richards,* and as yet unsettled in this circuit, is what state's whole law should be applied in cases involving multiple acts or omissions occurring in different states. This is not an easy question. And it is not surprising that two distinct solutions emerge from the decisions of courts that have wrestled with this problem. Some courts have chosen to apply the whole law of the place of *each* act or omission. *See Kohn v. United States,* 591 F.Supp. 568 (E.D.N.Y. 1984); *Insurance Co. of North America v. United States,* 527 F.Supp. 962 (E.D.Ark. 1981); *In re Silver Bridge Disaster Litigation,* 381 F.Supp. 931 (S.D.W.Va.1974). They reach this result, ostensibly, via a literal reading of the FTCA. Required by the statute to apply "the law of the place where the act or omission occurred," these courts dutifully apply the law of the place of *each* act or omission. While this approach can lead to the application of conflicting rules, often it does not "either because each place uses the same choice of law rule thus pointing to one body of governing substantive law or because, although the choice of law rules point to different places, the substantive law of each place is the same." *Beattie v. United States,* 756 F.2d 91, 140 (D.C.Cir.1984) (Wald, J., dissenting). A factually apposite example of this approach is *Insurance Co. of North America v. United States,* 527 F.Supp. 962 (E.D.Ark.1981). There, an airplane allegedly crashed due to the negligence of air traffic controllers in more than one state. Since the whole law of both states followed *lex loci delicti,* the court applied the substan-

---

**2.** An initial element of Spring's complaint alleged that the FAA negligently allocated responsibility for the Frederick airspace to Baltimore Approach, rather than to Dulles Approach. Because this allocation decision appears to have fallen within the FAA's discretionary functions, this allegation was dismissed with prejudice pursuant to the stipulation and order of partial dismissal executed by the parties on September 21, 1993. *See United States v. Varig Airlines,* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984);

*Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

**3.** Md.Cts. & Jud.Proc.Code § 3–904(e) (1992). This limitation applies if the child is over 21 years of age or if the child did not receive at least fifty percent of her support from her parents.

**4.** *See* Va.Code § 8.01–50 to –56 (1992).

tive law of the state of the crash. *See also In re Silver Bridge Disaster Litigation,* 381 F.Supp. 931 (S.D.W.Va.1974) (finding that the choice of law problem could be disregarded because the substantive legal principles of each of the jurisdictions did not conflict); *cf. Kohn v. United States,* 591 F.Supp. 568 (E.D.N.Y.1984) (applying the choice of law rules of both states and concluding that each state's substantive law should apply to the negligent acts occurring within its own borders).

The second solution to this FTCA multistate choice of law problem is, as the Seventh Circuit put it, to choose the whole law of "the place of the last act or omission having a causal effect, or the place of the act or omission having the most significant causal effect." *Bowen v. United States,* 570 F.2d 1311, 1318 (7th Cir.1978). While the *Bowen* court indicated a preference for this second "most significant causal effect" factor,[5] it did not reach the issue since, focusing on either consideration, the same state law applied.

■ As it happens, the same is true here. Virginia and Maryland follow the rule of *lex loci deliciti,*[6] which means that both states, in this instance, would apply the law of the state where the wrong occurred. Thus, it matters not here whether this Court follows the first solution and applies the law of both Virginia and Maryland or follows the second solution and applies the law of the state where the last or most significant omission occurred.[7] In both instances, *lex loci delicti* would govern the choice of law, leading, as we shall see, to the conclusion that this dispute is governed by Maryland substantive law, no matter which state's whole law is initially consulted. Similarly, because both Maryland's and Virginia's choice of law rules include *lex fori,*[8] Virginia procedural law, as

the law of the forum state, will apply regardless of which state's whole law is initially chosen.

Under *lex loci delicti,* the applicable state substantive law is the law of the "place of the wrong." Courts have interpreted "the place of the wrong," for purposes of *lex loci delicti,* as the place where "the last event necessary to make an [actor] liable for an alleged tort takes place." *Quillen v. Int'l Playtex, Inc.,* 789 F.2d 1041, 1044 (4th Cir.1986) (quoting *Miller v. Holiday Inns, Inc.,* 436 F.Supp. 460, 462 (E.D.Va.1977)).[9] Although no Maryland or Virginia cases apply *lex loci delicti* in the context of an airplane crash, courts elsewhere have done so. Those cases uniformly recognize that in airplane accident cases the appropriate state law under *lex loci delicti* is the law of the situs of the crash. *See Thornton v. Cessna Aircraft Co.,* 886 F.2d 85 (4th Cir.1989) (holding that the law of the state in which the airplane crash occurred was the applicable law under South Carolina's interpretation of *lex loci delicti* ); *see also Richards,* 369 U.S. 1 at 15, 82 S.Ct. 585 at 594 (interpreting Oklahoma law to hold that the applicable law in an airplane crash under *lex loci delicti* was the place where the injury occurred); *Bowen v. United States,* 570 F.2d 1311, 1319 (7th Cir.1978) (applying Indiana *lex loci delicti* law to find that the applicable law in a FTCA case arising from a plane crash was the situs of the crash). These decisions and their rationales are persuasive. Therefore, the "place of the wrong" in the instant case was Maryland, the situs of the airplane crash, and Maryland substantive law is the applicable law.

## IV.

Yet, the inquiry does not end here. Still to be resolved is the question whether the doc-

---

5. At least one case following *Bowen* has focused on the "most significant causal effect" in determining the applicable state law. *See Andrulonis v. United States,* 724 F.Supp. 1421, 1471 (N.D.N.Y.1989).

6. *See McMillan v. McMillan,* 219 Va. 1127, 253 S.E.2d 662 (1979); *Hauch v. Connor,* 295 Md. 120, 453 A.2d 1207 (1983).

7. Even so, it is worth noting that were an election necessary, the second solution, embodied in

*Bowen,* is the more appealing. This solution prudently recognizes the potential for conflict when more than one state's law is applied and sensibly opts for the whole law of the state most closely tied or related to the wrong.

8. *See Frye v. Commonwealth,* 231 Va. 370, 345 S.E.2d 267 (1986); *Jacobs v. Adams,* 66 Md.App. 779, 505 A.2d 930 (1986).

9. In *Quillen,* the Fourth Circuit's panel decision misquotes *Miller,* substituting "act" for "actor."

trine of *lex loci delicti,* applicable to substantive issues, is also applicable to the damage limitation issue giving rise to this choice of law dispute.

▌ Under Virginia law, "questions of substantive law are governed by the law of the place of the transaction or the place where the right is acquired (*lex loci*), while questions of procedure and remedy are governed by the law of the place where the action is brought (*lex fori*)." *Frye v. Commonwealth,* 231 Va. 370, 376, 345 S.E.2d 267, 272 (1986); *Willard v. Aetna Casualty & Surety Co.,* 213 Va. 481, 483, 193 S.E.2d 776, 778 (1973); *Maryland ex rel. Joynes v. Coard,* 175 Va. 571, 9 S.E.2d 454 (1940). Maryland courts also follow this approach, applying *lex loci delicti* to substantive matters and *lex fori* to procedural matters. *Jacobs v. Adams,* 66 Md.App. 779, 505 A.2d 930 (1986); *see also Doughty v. Prettyman,* 219 Md. 83, 88, 148 A.2d 438, 443–44 (1959). Consequently, the important question here is whether wrongful death statutes, and their associated damages limitations, are matters of substantive law, on the one hand, or matters of procedure or remedy, on the other.

The answer to this question is not immediately apparent.[10] On reflection, the answer is found in an understanding of the right to recover for wrongful death. No such right or cause of action existed in common law. *See, e.g., Overstreet v. Kentucky Cent. Life Insur. Co.,* 950 F.2d 931, 935 (4th Cir.1991). It was created by the various state legislatures, with the result that there is substantial variability from state to state. But the salient point here is to recognize that the types of compensable survivors' injuries or damages are an integral part of the substantive right to recover. Put another way, the salient point is that an integral part of a legislature's task in creating the substantive right to recover for wrongful death is to decide and define what kinds of harms or injuries

would be compensable. Given this, it follows that the limitation on parents' right of recovery for the death of an adult child to pecuniary loss is an integral part of the substantive right to recover for wrongful death and is accordingly a matter of substantive law.

Under Maryland law, statutory definitions of the damages recoverable are clearly recognized as substantive. *See Black v. Leatherwood Motor Coach Corp.,* 92 Md.App. 27, 606 A.2d 295 (1992), *cert. denied Leatherwood Motor Coach Corp. v. Martinez,* 327 Md. 626, 612 A.2d 257 (1992). Consequently, *lex loci delicti* would apply, and the law of Maryland would be controlling.

While there is no dispositive, controlling Virginia authority,[11] analogous authority points convincingly to the same conclusion. For example, Virginia courts have held that statutes of limitations contained in wrongful death statutes are substantive, as opposed to remedial in nature. In recognizing the statute of limitations contained in the Virginia wrongful death act as substantive, the Fourth Circuit stated that "[w]hen the legislature creates a right of action that did not exist at common law, the limitations specified in the statute operate as a substantive limit on the right to recover." *Overstreet v. Kentucky Cent. Life Ins. Co.,* 950 F.2d 931 (4th Cir.1991). The Virginia Supreme Court reached a similar conclusion in *Jones v. R.S. Jones & Assocs., Inc.,* 246 Va. 3, 431 S.E.2d 33 (1993). In *Jones,* the court declared that "the [statute of limitations] contained in [the Florida wrongful death statute] is directed so specifically to the right of action provided by the state's wrongful death act as to warrant saying that the limitation qualifies the right." *Id.* at 35.

Also analogously supportive is *Walters v. Rockwell Int'l Corp.,* 559 F.Supp. 47 (E.D.Va. 1983). There, plaintiff's decedent was killed in a North Carolina automobile accident and plaintiff brought suit in Virginia under North

---

10. As any first year law student knows from wrestling with the murky substantive/procedure dichotomy, framing a legal test in terms of this dichotomy often begs the question. *See Sibbach v. Wilson & Co.,* 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941).

11. In Virginia, "[t]he court of the forum state determines according to its own conflict of laws rules whether a question of law is substantive or procedural." *Willard,* 213 Va. at 483, 193 S.E.2d at 778. Virginia courts have not yet definitively decided whether recovery limitations contained in wrongful death statutes are matters of substantive or purely remedial law.

Carolina's wrongful death act. The question presented was whether, under Virginia choice of law rules, the scheme for distributing the settlement proceeds should be based on Virginia law or North Carolina law. The North Carolina wrongful death statute directed that distribution of damages should be made in accordance with the North Carolina Intestacy Act. Applying the *Coard* rule, the *Walters* court ruled that "while the right to recovery and the limits on recovery are substantive law, the distribution of recovery is remedial law." *Walters,* 559 F.Supp. at 49–50. In *Walters,* Virginia procedural law was held to govern the distribution of damages. Because the instant case involves "limits on recovery," the *Walters* standard supports the application here of Maryland substantive law.

Accordingly, the definitions of, and limitations on, wrongful death damages are substantive in nature and are therefore controlled by the law of Maryland, the place of the wrong.

An appropriate order will issue.