Virgil JEAN

v.

William E. DUGAN.

Civ. No. H 90–394.

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 26, 1993.

J. Charles Sheerin, Michigan City, IN, for plaintiff.

Louis E. Sigman, Dale D. Pierson, Chicago, IL, for defendant.

## ORDER

LOZANO, District Judge.

This matter is before the Court on the Defendant's Motion to Strike Affidavit of Virgil Jean, filed by the Defendant, William E. Dugan ("Dugan") on March 13, 1992, Motion to Strike Second Affidavit of William Dugan, filed by the Plaintiff, Virgil Jean ("Jean"), on March 31, 1992, Motion to Strike Defendant's Motion for Summary Judgment, filed by Jean on April 10, 1992, Defendant's Motion to Reconsider Order Granting Plaintiff Leave to File Supplemental Evidence, filed by Dugan on May 22, 1992, and Defendant's Motion for Summary Judgment filed on January 27, 1992. Being advised in the premises, this Court hereby GRANTS IN PART and DENIES IN PART Dugan's Motion to Strike Affidavit of Virgil Jean, DENIES Jean's Motion to Strike Second Affidavit of William Dugan, DENIES Jean's Motion to Strike Defendant's Motion for Summary Judgment, GRANTS Dugan's Motion to Reconsider Order Granting Leave to File Supplemental Evidence, and GRANTS Dugan's Motion for Summary Judgment.

## BACKGROUND

Dugan is a resident of the State of Illinois. In August 1986, Dugan defeated the then incumbent in the election for President–Business Manager of Local 150. The International Union of Operating Engineers, Local 150 (the "Union") is a voluntary unincorporated association of heavy equipment operators with eight district offices throughout Northern Indiana, Northern Illinois and Eastern Iowa.

Jean has been a member of the Union since 1952 and has held various positions in the Union. In August 1986, the members of the Union elected Jean to the position of Financial Secretary on Dugan's slate. In September 1986, Dugan, through the authority vested in him as a President–Business Manager, appointed Jean to the position of Business Representative. In September 1986, the Union appointed Jean as Trustee of the Midwest Operating Engineers Welfare Fund. On December 12, 1988, Dugan terminated Jean's employment as a Business Representative. On or about February 9, 1989, Jean resigned his position as Financial Secretary.

On December 31, 1990, Jean filed a Complaint for damages and injunctive relief against Dugan, individually. In Count I of Jean's Complaint, Jean alleges he was defamed by various statements made in 1988 and 1989. In Count II Jean sets forth a retaliation claim and in Count III Jean alleges interference with contractual relations.

## DISCUSSION

*Dugan's Motion to Strike Affidavit of Virgil Jean*

By his Motion, Dugan requests this Court to strike the Affidavit of Virgil Jean in its entirety pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56(e) sets forth the standards for evidentiary affidavits filed in support of or in response to motions for summary judgment and provides: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." "It is the policy of rule 56(e) to allow the affidavit to contain evidentiary matter, which if the affiant were in court and testifying on the witness stand, would be admissible as part of his testimony." *American Security Co. v. Hamilton Glass Co.*, 254 F.2d 889, 893 (7th Cir.1958). Dugan requests this Court to strike Jean's affidavit on the grounds that the affidavit contains hearsay, conclusory statements, is not made with personal knowledge, and certain statements contradict other prior statements. In response to Dugan's hearsay objections, Jean offers no legal basis to this Court to find that Jean's statements are not hearsay. Jean's

counsel's confusion as to what is required in an affidavit opposing a motion for summary judgment is evidenced by the following statement: "Plaintiff is not certain what Defendant means by an out-of-court statement except that counsel is stating that the declarant is not making the statement and is therefore not available for cross-examination. However, that is not the test for the affidavit." As to Dugan's personal knowledge objection, Jean again offers this Court nothing to controvert Dugan's assertion that said statements were not made with personal knowledge.

■ Dugan also requests this Court to strike portions of the affidavit which contradict a letter that was written prior to this litigation. In this letter, Jean stated,

"I first want you to know that the president asking me to do so has not influenced me in any manner . . . After much thought and many requests from the members of this Local, I have decided to resign my position as Financial Secretary this 9th day of February, nineteen hundred eighty-nine in order that I may actively seek the office of President–Business Manager of this local . . .

■ In Jean's Affidavit Jean states that he was forced to resign and in fact did not voluntarily resign as Financial Secretary. As Dugan correctly points out, "a party cannot create a genuine issue of fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony." *Lovejoy Electronics, Inc. v. O'Berto,* 873 F.2d 1001, 1005 (7th Cir.1989); *Diliberti v. United States,* 817 F.2d 1259, 1263 (7th Cir.1987). In this case, Jean's deposition testimony contradicts a prior *unsworn* admission of Jean. Dugan does not cite to nor has this Court found any case which states that a party may not contradict plain admissions which were otherwise unsworn testimony. Accordingly, as to this aspect, Dugan's Motion is DENIED. However, after reviewing Dugan's lengthy Motion to Strike, the Court hereby STRIKES the following paragraphs of Jean's affidavit: 3, 4, 7, 8, 14, 15, 18, 20, 21, 22, 23, 26, 27, 28, 33, 41, 43, and 50 because such portions contain inadmissible

hearsay. *Pfeil v. Rogers,* 757 F.2d 850, 860–63 (7th Cir.), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986). The Court ALSO STRIKES sections 6, 24, 36, and 45 as said paragraphs contain conclusory statements. *See First Commodity Traders, Inc. v. Heinold Commodities, Inc.,* 766 F.2d 1007, 1011 (7th Cir.1985) (conclusory statements and affidavits opposing a motion for summary judgment are not sufficient to raise a genuine issue of material fact). Paragraphs 5, 10, 15, 24, 30, 33, 43, and 44 are ALSO STRICKEN as they contain statements not made with personal knowledge. *See Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572 (7th Cir.1989). Moreover, paragraphs 37, 40, and 48 must be stricken as they contain language which contradicts Jean's prior depositions. As to part two of Jean's affidavit, this Court HEREBY STRIKES paragraphs 3, 10, 12, 13, 15, and 16 as not based on personal knowledge, 5, 8, and 9 as conclusory, and 19, 21, 22, 23, 24, and 25 as not being relevant to the issues in this case. *See* Rule 402 of the Federal Rules of Evidence.

*Motion to Strike Second Affidavit of William Dugan*

In support of his Motion, Jean argues that paragraphs 4 and 5 of Dugan's Second Affidavit contains assertions which are not based upon personal knowledge. This Court finds Jean's argument without merit and DENIES this Motion.

*Motion to Strike Defendant's Motion for Summary Judgment*

By his Motion, Jean asserts this Court should strike Dugan's Motion for Summary Judgment because "the motion and supporting materials including the reply and supplemental memoranda are confusing and misleading" and "the affidavits of defendant submitted in support of said motion are either directly contrary to facts known to defendant or prior statements made by defendant under oath." The sum and substance of Jean's complaint is that Dugan has filed its Motion for Summary Judgment in bad faith, claiming that there are no material issues of fact. However, Jean concedes that Dugan has not violated Rule 11 of the Federal Rules of Civil

Procedure. Nothing in Jean's brief persuades this Court to strike Dugan's Motion for Summary Judgment.

■ Jean also points out three instances in which Jean claims Dugan's third affidavit should be stricken. As to Jean's first assertion, this Court can only speculate as to what Jean is arguing after reading the gobbledygook he presented to the Court. This Court finds merit as to Jean's second assertion as at paragraph seven of Dugan's Affidavit, he states, "As the Union's Financial Secretary, Mr. Jean also regularly attended . . . monthly *executive board meetings* customarily held in Countryside, Illinois, and for which he was *compensated separately* from his *salary* as a *Business Representative* and in a labor organization annual form LM2 for the years 1986, 1987, and 1988. On the above mentioned form, Dugan signed under applicable penalties of law that Jean did not receive any compensation as a Business Representative. As such, the above-assertion is hereby STRICKEN from paragraph seven of Dugan's Affidavit. Jean also claims that Dugan offered contradictory testimony when he stated "Mr. Jean and three other Business Representatives assigned to District 7 each had desks in that [District Office in Indiana]." When he testified under oath in his deposition that [t]he Financial Secretary got one in Countryside [Illinois], the [T]reasurer got one in Countryside . . . and Jim Ness, when he is out in the field, his was up in Waukegan." However, this Court does not find these two statements to be inconsistent as it is conceivable that Jean would have a desk in his capacity as Business Representative in Indiana and would also have a desk in his Financial Secretary in Countryside, Illinois. In this respect, Jean's Motion is DENIED.

*Motion to Reconsider Order Granting Jean Leave to File Supplemental Evidence*

■ By his Motion, Dugan requests this Court to vacate its Order dated May 11, 1992, granting Jean's Motion to file supplemental evidence in the form of a deposition taken of William Connors in a different case, taken almost two years ago. Dugan also argues that the Order should be vacated because the issues in the two cases are different. The deposition was taken in the case of *William E. Dugan v. M & W Dozing & Trucking, Inc.*, 727 F.Supp. 417 (N.D.Ill. 1989), which was based on a suit to recover delinquent contributions under ERISA. Dugan claims that there is no indication that any of the issues are the same in this case and the prior case. Dugan further argues that the parties are not identical either. In order to consider the deposition of Mr. Connors, this Court must consider whether or not his testimony is admissible into evidence at trial. Rule 804(b)(1) of the Federal Rules of Evidence governs the admissibility of depositions taken in prior proceedings and states as follows:

> (1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Although Dugan's attorney in this case represented Dugan in the prior case, there is no evidence that the issues in the two cases are similar enough such that defense counsel had an opportunity and similar motive to develop the testimony in each respective case. *Oberlin v. Marlin American Corp.*, 596 F.2d 1322, 1329 (7th Cir.1979); *Hoppe v. G.D. Searle & Co.*, 779 F.Supp. 1413, 1417 (S.D.N.Y.1991). Further, Dugan points out that Jean had ample time to redepose Mr. Connors if he so desired, and presented the Court with this deposition months after the final discovery cut-off date of January 10, 1992. For these reasons, Dugan's Motion is hereby GRANTED, and this Court's Order of May 11, 1992, is HEREBY VACATED.

*Motion for Summary Judgment*

■ Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *First Wis. Trust Co. v. Schroud,* 916 F.2d 394, 398 (7th Cir.1990). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991); see also *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the Court must read all facts in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513; *Richardson v. Penfold,* 839 F.2d 392, 394 (7th Cir.1988).

■ The burden is upon the moving party to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, which it believes demonstrates an absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once the moving party has met this burden, the nonmoving party may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Becker v. Tenenbaum–Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir.1990); *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 620 (7th Cir.1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might effect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v. Fiorenzo,* 840 F.2d 427, 434 (7th Cir.1988) (citing *Anderson,* 477 U.S. at 250–252, 106 S.Ct. at 2511–2512)).

■ "[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir. 1988). Therefore, if a party fails to establish the existence of an essential element of its case on which it bears the burden of proof at trial, summary judgment will be appropriate.

In this situation, there can be "'no genuine issue as to any material fact', since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552 (1986).

The Court finds that no genuine issue of material fact exists, based on the paucity of information contained in Jean's affidavit. In 1986, the Union conducted its regularly scheduled election of officers. Pursuant to the Constitution and By–Laws of the Union, the offices of President–Business Manager, Vice President, Recording Corresponding Secretary, Financial Secretary and Treasurer are elected for a three-year term. At that time, Dugan ran for the office of President–Business Manager and included Jean on his slate for the Financial Secretary position. Both were successful in the election, and, as a result, Jean became Financial Secretary, receiving 978 votes in District 7 alone.

The By–Laws of the Union set forth the duties and responsibilities of various offices. Under Article XIX, only the President–Business Manager and Recording–Corresponding Secretary are paid positions. Article XI, Section 1, authorizes Dugan as President–Business Manager, "to appoint all business representatives and other employees who shall be directly responsible to him, *set salaries* and have full power to lay off or terminate the employment of such employees. . . ." Thus, although the Financial Secretary is not a salaried position, the President–Business Manager is authorized under this Section to pay Jean a salary. Additionally, in September 1986, Dugan named Jean as a Trustee to the Midwest Operating Engineers Welfare Fund.

Hebron Plumbing & Heating Company ("Hebron") is a corporation located in Indiana. Hebron signed two memoranda of agreement with the Union which obligated Hebron to make various contributions to the Midwest Operating Engineers Funds. After Thomas Hartman, a Hebron employee and member of the Union, made an inquiry regarding his eligibility for benefits, the Midwest Operating Engineer fund office requested an audit on the company. Eligibility for

pension and health insurance benefits is dependent upon the payment of contributions by the employer to the funds on behalf of the individual employee. Upon Hebron's refusal, the Trustees of the various funds filed suit on January 13, 1988, to compel an audit in federal court (*William E. Dugan, et al. v. Hebron Plumbing and Heating, Inc.*, Cause No. 88 C 0311). There, Hebron argued that it need not permit an audit and that it was not obligated to make any contributions because of a "side agreement" which it entered into with Jean.

When Dugan learned of this claim he investigated the allegation that various Business Representatives in District 7, including Jean, were not enforcing the obligation of various companies to make contributions to the funds pursuant to the memoranda of agreements. Dugan immediately discussed the problem with Jean and told him to take whatever necessary steps to correct the problem and to make sure that the contributions would be paid. Jean admitted to Dugan that he had made deals with this company, as well as other companies, by telling them, among other things, that they did not have to make contributions. Jean responded that things might get "a little sticky" and certain people may be embarrassed. Once again, Dugan repeated his orders and told Jean to collect the contributions and solve the problem. Moreover, Dugan instructed Jean to prepare a list of all contractors which had been told they need not make contributions. Jean never produced such a list to Dugan.

The Trustees eventually audited Hebron and determined it owed about $40,000 in contributions. During the course of the litigation and in final preparation of a pretrial order, it became apparent to the funds' attorneys that Hebron possessed a list containing all of the contractors in the area which had been told they did not have to make contributions. In early December 1988, the funds' attorney informed Dugan that the official union documents were being furnished to Hebron without the knowledge and authorization of the Union, and recommended that Jean be questioned in this matter.

On December 7, 1988, the Trustees of the various Midwest Operating Engineers Funds were scheduled to attend a Trustees' meeting. Prior to that meeting, Dugan had arranged to meet with Jean. Dugan, Jean, and the fund attorneys met and discussed the Hebron matter. When first asked whether he had ever given any documents or lists to Hebron Plumbing and Heating, Jean denied doing so. Later, however, Jean admitted that he did give Hebron copies of various memoranda of agreements with other employers. Jean also admitted that he had prepared a list of contractors who had not been contributing to the fringe benefit funds, as requested by Dugan, but that it had mysteriously "disappeared" from his desk. Jean further conceded that the President of Hebron was in possession of such a list. When Dugan asked Jean why he divulged such information to Hebron without the Union's authority, Jean responded that although Hebron's President may or may not be his friend, Jean stated he would do it for anybody.

Based on the questioning of Jean, Dugan believed he was obligated to report his findings to the Board of Trustees. Dugan also excused Jean from attending the Trustees' meeting. Dugan later reported his findings to the Board of Trustees and advised the Trustees that based on all the information he had received, Dugan would have no alternative but to remove Jean as a Trustee.

On December 12, 1988, Dugan once again met with Jean in his office and advised him that he had been removed as a Trustee of the Welfare Fund. Moreover, Dugan suggested that Jean resign as a Business Representative in order to avoid personal embarrassment. Jean refused to resign. Pursuant to his authority under the By-Laws, Dugan then fired Jean as a Business Representative of Local 150. Dugan told Jean that as a President-Business Manager of Local 150, there would be no way Jean would be kept on the payroll.

On December 16, 1988, Jean prepared a letter address to "Brother and Sister Members" of the Union. Jean wanted the letter to be printed in he January 1989, issue of the *Local 150 Engineer.* On December 22, 1988,

Jean submitted to Dugan a statement which he wanted to read at the Union's various central and district meetings. Both of Jean's requests were met; Dugan printed Jean's December 16th letter in the January 1989, newspaper issue and Dugan read or had read his December 22, 1988, letter at the various meetings. Dugan also responded to Jean's letter of the January 1989, issue in the section entitled "Dugan's Corner". On or about February 9, 1989, Jean prepared another letter in which he resigned his elected position as Financial Secretary. In the letter, Jean stated, "I first want you to know that the President asking me to do so has not influenced me in any manner." Jean continued to explain: "I have decided to resign my position as Financial Secretary this 9th day of February [1989] ... in order that I may actively seek the office of President–Business Manager of this Local without any conflict of interest being involved...."

In August 1989, Jean ran against Dugan for the position of Pres–Business Manager at the scheduled election of officers. Dugan defeated Jean and the members of the Union re-elected him for another three-year term. In District 7, however, Jean received 948 votes, almost the same number he had received three years earlier.

In Count I of the Complaint, Jean alleged that in December 1988, Dugan made defamatory statements in public meetings to Union members; "... knowing those statements to be contrary to facts known to defendant ..., without making an appropriate or reasonable inquiry and without regard to their truth"; and that such statements were made to substantially and irreparably harm Jean's good name and reputation. In his Answers to Defendant's First Set of Interrogatories, however, Jean identified eight specific statements he alleges are defamatory.

First, Jean claims that on December 15, 1988, at a District 2 meeting in Joliet, Illinois, Dugan announced to the members in attendance that Jean "sided with a contractor over a member and even plaintiff's wife is a witness for a contractor." Next, Jean alleges that a defamatory statement was made by Joe Ward in December 1988/January 1989, at a steward/craft foreman meeting in Portage,

Indiana. Joe Ward allegedly said Jean "had made a deal and sided with a contractor to deprive a member of benefits." Jean also alleges that Dugan made various defamatory statements at the December 22, 1988, Executive Board Meeting. Next, Jean alleges that Dugan's article in the January 1989, Local 150 newspaper, which responded to Jean's letter, was defamatory. Jean further argues that Dugan and Parker allegedly assisted in disbursing the papers throughout all the districts in Local 150's jurisdiction. Jean further avers that Bernard Baum, a Union attorney, wrote defamatory statements to the Northwest Indiana Building Trades Council on January 23, 1989. Finally, Jean alleges that Dugan re-affirmed his own newspaper article at a January 1989, general membership meeting in Countryside, Illinois.

 In order to determine the outcome of this Motion, this Court must determine whether Illinois or Indiana law applies. In an action based on diversity jurisdiction, this Court must apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Hager v. National Union Elec. Co.*, 854 F.2d 259, 260 (7th Cir.1988); *Cutshall v. Ford Motor Co.*, 719 F.Supp. 782, 783 (S.D.Ind.1989). Indiana follows the most significant contacts rule in determining choice of law questions. *Tompkins v. Isbell*, 543 N.E.2d 680, 681 (Ind. Ct.App.1989); *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073–74 (Ind.1987). In *Hubbard*, the Supreme Court clarified Indiana choice of law rules. Indiana traditionally followed the *lex loci delicti commissi* rule which directed a court to apply the substantive law where the tort was committed. *Burns v. Grand Rapids & Indiana R.R. Co.*, 113 Ind. 169, 15 N.E. 230 (1888). The tort is said to have been committed in the state where the last event necessary to make an actor liable for the alleged wrong takes place. *Hubbard*, 515 N.E.2d at 1073. The *Hubbard* court realized that application of the traditional rule may sometimes lead to anomalous results. *Id.* For example, if an automobile accident occurred in Illinois between two Indiana residents, a court would be forced to apply the law of Illinois, even

through the location of the accident was fortuitous and an Indiana court would have a greater interest in applying its own law. *Id.* The Court recognizes that in a large number of cases the traditional rule is appropriate as a place of the tort will be a significant contact. However, in other cases where the place of the tort is not a significant contact, a court should consider other factors such as: (1) the place where the conduct causing the injury occurred; (2) the residence or place of business of the parties; and (3) the place where the relationship is centered. *Id.* at 1073–74 (citing Restatement (Second) of Conflicts of Laws, § 145(2) (1971)). The above factors should be evaluated according to their relative importance to the particular issues before the Court. *Id.* at 1074.

 As to Jean's employment claims, the tort or the last event necessary to make Dugan liable took place in Illinois when he terminated Jean. However, the place of the tort bears little significant connection to this legal action because nearly every action leading up to Jean's allegedly tortious termination occurred in Indiana. Thus, this Court must apply the additional factors outlined in *Hubbard.* The determination of choice of law in this case is difficult because Jean held the position of both Financial Secretary as well as a Business Representative for the Union. As its Financial Secretary, Jean reported to the Countryside, Illinois office on a weekly basis and all the primary business and financial records were kept and maintained in the Countryside office. Moreover, the funds, which were the responsibility of Jean, are kept in Illinois banks. As an elected officer, Jean had responsibilities for all members and districts of Local 150, regardless of whether the forum state of the members was Illinois or Indiana. Jean possessed a business card for his Financial Secretary position which listed Countryside as his place of business. The principle offices of Local 150 are located in Countryside. As Financial Secretary, Jean was required to attend the monthly meetings of the executive board which were conducted in Countryside. On the labor organization's annual report form

LM–2 for the years 1986 through 1990, filled out by Dugan, a Schedule 9 listing lists the elected officers and officials of Local 150 together with their salaries. Jean was not listed among those other individuals as a Business Representative. However, Jean was listed as a Financial Secretary receiving a gross salary of $65,525. Jean never received independent compensation for his duties as a Business Representative.

Jean also possessed a business card as a Business Representative which stated that his offices were located in Merrillville, Indiana. Jean resides in Indiana and his travel time from his home to the office in Countryside, Illinois was 45 minutes, about the same time it would take him to travel from his home to the office in Merrillville. Jean was required to and did on a daily basis visit or attend to business at the District 7 office in Merrillville. At the Merrillville office Jean had a desk and received messages and mail. Jean maintained an office for his position as Financial Secretary in Merrillville, which was also used by another Business Representative. Dugan stated at a meeting of the membership in District 7 that Jean "would be in charge of and run Indiana." District 7 is comprised of the Indiana counties of Lake, Porter, LaPorte, Newton, Jasper, Starke, and Pulaski. Jean was also responsible as a Business Representative to attend regularly scheduled District 7 membership meetings. Perhaps most importantly, the actions which Jean complains of involves Dugan accusing Jean of having made deals and not enforcing contractual obligations with local contractors, all of which allegedly took place in Indiana. Hebron operates out of Hebron, Indiana and another contractor, M & W Dozing and Trucking, was at that time engaged in a job at Crown Point.

Based on the above facts, this Court must find that the most significant relationship to Jean's employment actions is Indiana.[1] Jean spent most of his time working in Indiana and his actions have a significant relationship

---

1. Jean argues that it is important to note that Dugan asked Jean to concentrate his activities as Financial Secretary and not as a Business Repre-

sentative as this would take up most of his time. However, this conclusion is not supported by facts.

to Indiana. These two factors outweigh the fact that Jean was paid as a Financial Secretary.

As to Jean's defamation claims, the alleged defamatory statements were published in both Indiana and Illinois. However, given the idea that Jean's reputation in the community was injured, the facts that he primarily worked in and resided in Indiana, where he would suffer the most injury, weigh in favor of applying Indiana law. *See Fleming Sales Co. v. Bailey,* 611 F.Supp. 507, 517 (N.D.Ill.1985).

### Defamation Claims

As noted previously, Jean claims that he was defamed several times by Dugan. The statute of limitations in Indiana for defamation is two years. Ind.Code Ann. § 34–1–2–2(1) (West 1988). As such, those statements made in 1988 are barred by the statute of limitations. As to the other statements made in 1989, Jean must prove that the "defamatory statements were published with knowledge of their falsity or with reckless disregard of whether they were true or false." *Linn v. United Plant Guard Workers of America,* 383 U.S. 53, 65, 86 S.Ct. 657, 664, 15 L.Ed.2d 582 (1965). This standard is not satisfied with evidence of common law ill will. As the Supreme Court explained in *Old Dominion Branch No. 496 Nat'l Ass'n of Letter Carriers v. Austin:*

> [t]he Court was obviously using [in *Linn* ] "malice" in the special sense it was used in *New York Times*—as a shorthand expression of the "knowledge of falsity or reckless disregard of the truth" standard ... Instructions which permit a jury to impose liability on the basis of the defendant's hatred, spite, ill will, or desire to injure "are clearly impermissible" ... Ill will toward the plaintiff, or bad motives, are not elements of the *New York Times* standard.

418 U.S. 264, 281, 94 S.Ct. 2770, 2780, 41 L.Ed.2d 745 (1974). Thus, in order for Jean to meet his burden, he must prove that Dugan "knew that what [he] wrote was not true, or strongly suspected that it was untrue yet [was] recklessly indifferent to this." *Chang v. Michiana Telecasting Corp.,* 900 F.2d 1085, 1088 (7th Cir.1990). In *Anderson v. Liberty Lobby, Inc.,* the Supreme Court held that, "there is no genuine issue if the evidence presented in the opposing affidavits is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence." 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). After reviewing the affidavits, Jean has not put forth even a scintilla of evidence which would suggest that Dugan believed his statements to be false or that he was recklessly indifferent to their truth or falsity. Accordingly, Dugan is entitled to summary judgment on Count 1 as a matter of law.

### Employment Claims

In Counts 2 and 3 of his Complaint, Jean appears to be alleging that Dugan tortiously interfered with his employment contract with the Union, or that he was wrongfully discharged. Jean claims that he had an employment contract as the Financial Secretary of Local 150 for a term of three years which would terminate or be terminated only upon the wholly voluntary resignation of the employee or on recall by those same members of Local 150 who elected him. Jean disputes that he was employed, appointed, or terminated as a Business Representative for the Union. Further, Jean claims he did not voluntarily resign his employment, but was forced to resign by Dugan. On the other hand, Dugan argues that it is clear that Jean had dual positions because Jean plainly stated in a letter to the members of the Union published in the January 1989 edition of the Local 150 Engineer that, "On December 12, 1988, President Business Manager William E. Dugan fired me", and "although I may no longer be a Business Agent, I am still the Financial Secretary of the Union." *See* Jean's Response to Defendant's First Request for Admission/Answer, ¶ 9, Doc. 1. However, even assuming *arguendo* that Jean maintained the single role of Financial Secretary, he is barred by the statute of limitations because the wrongful act of which he complains of occurred on December 12, 1988, when Dugan told Jean "you're off the payroll."

Jean claims this phrase is ambiguous and vague, which was further obscured by the fact that Jean received pay through December 15, 1988, a Christmas bonus check in late December, and it was not until January 1989 that he did not receive his pay check. Jean claims that when he asked for the reason for Dugan's conduct on December 12, 1988, Dugan explained to Jean that he removed Jean from the payroll as a Business Representative. However, whether Dugan removed Jean from the payroll as a Business Representative or Financial Secretary is immaterial because, under the Bylaws, Dugan had the authority to terminate Jean's salary for either position.[2] Dugan had the right to terminate Jean as a Business Representative, but could not terminate Jean's elected position of Financial Secretary. Further, the Court finds that the words "you're off the payroll" is clear and unambiguous of Dugan's intent to terminate Jean either in his capacity of Business Representative or Financial Secretary.

Indiana law provides that "all actions relating to the terms, conditions, and privileges of employment ... shall be brought within two (2) years of the date of the act or omission complained of." Ind.Code Ann. § 34–1–2–1.5 (West 1988). Jean argues that the act or omission complained of here was that act commencing in early January 1989 when Jean no longer received a salary as an elected employee officer of Local 150. Jean avers that "clearly, the failure to pay Plaintiff in January was the event which provoked or caused the actual constructive termination which was on or about February 9, 1989. That was the date of the wrongful termination." (Jean's Memorandum Opposing Motion for Summary Judgment at 11) Unfortunately for Jean, both the United States Supreme Court and the Seventh Circuit Court of Appeals hold differently.

Conversely, Dugan argues that Jean's cause of action accrued the date his termination became effective, citing *Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) for this proposi-

tion. Dugan is entirely correct on this point, as the Court in *Chardon v. Fernandez* stated "[t]he proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act became painful." 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981). The Seventh Circuit has also interpreted the *Ricks/Chardon* rule to mean that the statute of limitations runs from the date of notice, not from the date of actual termination. *Kuemmerlein v. Board of Educ.,* 894 F.2d 257, 259 (7th Cir.1990); *Mull v. Arco Durethene Plastics, Inc.,* 784 F.2d 284, 288 (7th Cir.1986); *Heiar v. Crawford County,* 746 F.2d 1190, 1194 (7th Cir.1984), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985). *See also Bell v. Metropolitan Sch. Dist. of Shakamak,* 582 F.Supp. 3 (S.D.Ind.1983). Consequently, based on *Chardon* and *Ricks,* Jean's employment actions in Counts 2 and 3 are barred by the statute of limitations because Jean received notice of his termination on December 12, 1988, and filed suit on December 31, 1990.

CONCLUSION

For the reasons stated herein, Dugan's Motion for Summary Judgment is hereby GRANTED, and the Clerk of the Court is hereby ORDERED to enter judgment in favor of Dugan and against Jean. Additionally, this Court hereby GRANTS IN PART and DENIES IN PART Dugan's Motion to Strike Affidavit of Virgil Jean, DENIES Jean's Motion to Strike Second Affidavit of William Dugan, DENIES Jean's Motion to Strike Defendant's Motion for Summary Judgment, and GRANTS Dugan's Motion to Reconsider Order Granting Leave to File Supplemental Evidence.

2. Dugan, as President–Business Manager, had the authority to "appoint all business representatives and other employees who shall be directly responsible to him, set salaries, and have full power to lay off or terminate the employment of such employees."