**Lee C. SMITH and Deborah Smith, Plaintiffs,**

v.

**SCRIPTO–TOKAI CORP. and Tokai Corp., Defendants.**

No. CIV.A. 99–1707.

United States District Court, W.D. Pennsylvania.

Dec. 28, 2001.

Daniel M. Taylor, Jones Gregg Creehan & Gerace, Pittsburgh, PA, for Plaintiffs.

Carl A. Eck, Meyer Darragh Buckler, Bebenek & Eck, Pittsburgh, PA, for Defendants.

*MEMORANDUM ORDER*

CINDRICH, District Judge.

This is a case for damages arising out of a residential fire started by plaintiffs' three-year-old child using a butane utility

lighter manufactured by defendants. On November 2, 2001, we issued a memorandum order that addressed defendants' motion for summary judgment, plaintiff's motion for reconsideration of our dismissal of their products liability claim, and defendants' motion to strike plaintiffs' supplemental pretrial statement. Pending is defendants' motion for reconsideration.

## I Plaintiff's Negligence Claim

Defendants argue that the court erred by *sua sponte* granting summary judgment to plaintiff on its negligence claim. The court did no such thing. In resolving defendants' motion for summary judgment, the court was required to address each element of the cause of action (duty, breach of duty, causation and damages.) We rejected defendants' argument that they did not owe plaintiffs a duty as a matter of law. As we explained, *Griggs v. BIC Corp.*, 981 F.2d 1429 (3d Cir.1992), and *Hittle v. Scripto–Tokai Corp.*, 2001 WL 1116556 (M.D.Pa. September 21, 2001), mandated that defendants did owe plaintiffs a duty. This finding was sufficient to defeat defendants' motion. However, because a trial would be necessary, we examined the other elements to ascertain what issues actually needed to be tried. Fed.R.Civ.P. 56(d). Thus, we concluded that defendant breached its duty as a matter of law by not manufacturing a "child-resistant" lighter.[1] Defendants never contended that their product had appropriate child-resistant features and they apparently do not take issue with this portion of our opinion. As to causation, we found: "There are material disputes of fact that prevent causation from being established

as a matter of law." November 2, 2001 Memorandum at 3. We noted that a jury would have to determine damages. In conclusion, we stated: "The case will proceed to trial on the issues of causation and damages." *Id.* Thus, defendants have misread our opinion. We simply did not enter summary judgment or direct a finding of negligence against defendants.

## II Plaintiff's Strict Liability Claim

We granted plaintiff's motion for reconsideration of their products liability claim because of developments in the law in Pennsylvania and in the Court of Appeals. *See Phillips v. Cricket Lighters*, 773 A.2d 802, 2001 WL 346061 (Pa.Super. April 10, 2001). Defendants' reliance on *Griggs* is misplaced. In *Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1046 n. 6 (3d Cir.1997), the Court of Appeals stated that *Griggs* had no precedential value as to the approach to be used in strict products liability claims. Instead, the Court of Appeals directed us to follow the risk-utility analysis outlined in *Motter v. Everest & Jennings, Inc.*, 883 F.2d 1223, 1227 (3d Cir.1989). In *Phillips*, the Pennsylvania Superior Court employed the risk-utility analysis in a very analogous case and we adhere to our conclusion that *Phillips* is presumptive evidence of how the Pennsylvania Supreme Court would decide the matter. We respectfully disagree with our sister court's opinion in *Hittle v. Scripto–Tokai Corp.*, 166 F.Supp.2d 159 (M.D.Pa.2001)[2], in this regard. We also adhere to our conclusion that the products liability claim, in its current procedural posture, may support punitive damages.

---

1. The parties and the court have used the terms "child-resistant" and "child-proof" synonymously. To the extent that there is practical difference between the terms, the court's opinions should be construed as if they had used the term "child-resistant."

2. We accept defense counsel's offer to provide all of Judge McClure's opinions in the *Hittle* case. Please submit them to the court with a copy to opposing counsel.

### III   Interlocutory Appeal

Defendants ask us to certify our memorandum opinion for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). There are several preconditions to such a certification: (1) the order must involve a "controlling question of law"; (2) there must be a "substantial ground for difference of opinion"; and (3) immediate appeal must "materially advance the ultimate termination of the litigation." As this case presently stands, there will be a trial on plaintiff's negligence claim (under negligent design and negligent failure to warn theories). In addition, there may be additional pretrial development of plaintiff's strict liability claim. Our November 2, 2001 memorandum directed the parties to propose a new case management order, if necessary.

### a.   Controlling Question of Law

The "duty" element of the negligent design claim involves a controlling question of law. The strict liability claim also involves a controlling question of law. As to both of these claims, reversal of our conclusions by the Court of Appeals would (legally or practically) result in their dismissal. The negligent failure to warn claim does not turn on a controlling question of law. Rather, the Court of Appeals has instructed us that such issues are best resolved by a jury. *Metzgar v. Playskool, Inc.*, 30 F.3d 459, 460, 465–66 (3d Cir. 1994).

### b.   Substantial Ground for Difference of Opinion

We are unaware of any substantial ground for difference of opinion on the negligent design claim. The Court of Appeals has emphasized the continuing viability of *Griggs* for negligence claims and our analysis agrees with *Hittle*. Indeed, defendants do not seek reconsideration of our denial of their motion for summary judgment on the negligent design claim. Defendants' Motion for Reconsideration at 3 n. 2. We acknowledge that *Hittle* dismissed a similar negligent failure to warn claim. However, as we explained above, this issue must be submitted to a jury for an evaluation of the evidence rather than decided on legal principles. As to the products liability claim, there is substantial ground for difference of opinion. This is an unsettled and complex area of Pennsylvania law. The Pennsylvania Supreme Court has not resolved the issue and the relevant opinions from the Superior Court are arguably contradictory. *Hittle*'s analysis of the recent *Phillips* decision is thorough, well-reasoned and adverse to ours.

### c.   Advancement of the Litigation

We conclude that an interlocutory appeal would not advance the litigation. Appellate proceedings will not prevent a trial of the negligent design and negligent failure to warn claims. Indeed, defendants seek a trial on the negligence claim. *See* Defendants' Proposed Order of Court. Based on the parties' approach to this litigation, we believe defendants' vow that "appeal is certain." Thus, we see little downside to trying the negligence and strict liability claims together. The parties can then present all of their appellate issues at once. We acknowledge that the Pennsylvania Supreme Court has granted allocatur in *Phillips*. However, we do not believe that it would be practical or fair to stay this case pending the Supreme Court's decision in that matter. Likewise, it would not be wise or efficient to ask the Court of Appeals for a mere prediction when the Supreme Court is already in the process of crafting the actual governing law. In sum, we conclude that interlocutory appeal is not warranted.

## IV  Duty of Candor to the Tribunal

In addition to mistakenly arguing that the court improperly granted summary judgment for the plaintiff, defense counsel also erroneously alleges that the court accused him of unethical conduct. Because counsel belabors at length, the court's discussion of the duty of candor to the tribunal, we will explain our views again.

To set the record straight, the court did not make any finding or accusation of unethical conduct in its November 2, 2001 Memorandum Opinion. To the contrary, we recognized that the Pennsylvania Bar Association, in an advisory opinion, interpreted the Rule 3.3 as *not* mandating disclosure of non-precedential authority to the tribunal. We then cited the American Bar Association's interpretation of the same ethical precept, which would require disclosure under these circumstances, and explained why we clearly prefer the ABA's broader interpretation. In other words, we took this opportunity to comment on a matter of importance to the court. We hoped that, in the future, advisory bodies would consider our viewpoint on the matter and that counsel might be guided accordingly. We did not then, and do not now, perceive that we wronged defense counsel in any way or that our comments on this important ethical precept were inappropriate.

We recognize that in the United States, lawyers are independent and may engage in zealous advocacy in direct conflict with the announced policies and desires of the government or powerful private adversaries. It is axiomatic that no system can be truly fair and effective without the courage, zeal and independence of the bar. We believe that it is largely through the dialectic borne of a true adversary system that the truth is found, rights are protected and the proper balance between citizen and government is attained.

Of course, no one would quarrel with the powerful and pre-eminent duty of a lawyer to zealously represent his or her client and thus to provide one half of the dialectic. However, there is another important ethical principle which must be considered—that of candor to the tribunal. Although instances of outright dishonesty are rare, courts are not altogether unfamiliar with less than forthright expositions of the supposed law governing a subject at issue. The dialectic, to have any validity, depends not only upon zeal, but upon basic intellectual honesty as well.

We concede that when the law which counsel fails to disclose to the tribunal is precedential, the magnitude of the problem is much greater than in instances where the law is non-precedential, as in the instant case. That is because the doctrines of *stare decisis* and precedent are considered indispensable to the fair administration of justice. A court follows judicial precedent when it attaches a specific legal consequence to a detailed set of facts in an adjudged case or judicial decision, which is then considered as furnishing the rule for the determination of a subsequent case involving identical or similar material facts and arising in the same court or a lower court in the judicial hierarchy. Thus, district court decisions are not precedential and court of appeals decisions are binding precedent only as to the appellate court itself and to lower courts in the same judicial hierarchy.

*Stare decisis* is the policy of courts to stand by precedent—i.e., to adhere to decisions and not disturb that which is settled. Our Supreme Court has said "It is indisputable that *stare decisis* is a basic self-governing principle within the Judicial Branch which is entrusted with the sensitive and difficult task of fashioning and preserving a jurisprudential system that is not based upon arbitrary discretion." *Pat-*

*terson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989), *citing The Federalist* No. 78 at 490 (Alexander Hamilton). It is important to remember that *stare decisis* does not mean to follow or stand by that which was said. Rather, it means to keep the *rationes decidendi* of past cases. Discerning the *rationes decidendi*—the reason for the decision—is a task which falls in the first instance to counsel and ultimately, to the court. In the absence of binding precedent, the *rationes decidendi* of non-binding opinions becomes critical.

Why are reasoned decisions important in a system of justice? First, to maintain stability. Clearly it is socially desirable that social relations should have a reasonable degree of continuity and cohesion. Second is the reliance factor. A measure of protection is provided to persons who have ordered their affairs upon reliance with contemporaneously announced law. Third is our notion of equality. Persons similarly situated should be similarly treated, and reasoned decisions remove some of the subjectivity that might otherwise occur if each judge was free to reach his or her own conclusions. Last is the image of justice. It is important not only that the court afford equal treatment to all people but that it appear to do so as well. Articulating the rationale for the decision gives both the effect and the appearance of impartiality and equality. The responsibility for ensuring equal treatment under law is one shared by the bench and the bar. We advance that interest when we jointly make a good faith effort to discern the existing law and apply it to the case before us in the same way that it has been applied to prior cases of a similar nature.

The primary point of our discussion of counsel's duty of candor to the tribunal is that we are helped immeasurably by good counsel who inform the court of the law within their own area of expertise. The first step to making an intelligent ruling is to be informed as to the state of the law. When counsel already has that law at his or her disposal, and has grasped the underlying rationale, it seems to us to be only a common-sense proposition that it be shared with the court.

While lawyers in private practice may choose a practice area and devote their time and attention exclusively to it, judges must be the consummate generalists. We must be prepared to render what we hope are intelligent and informed decisions involving a plethora of complex, and sometimes opaque, federal statutes, including antitrust, patent, trademark, copyright, ERISA and employment discrimination, to mention a few. Of course, we must also be keenly aware of developments in criminal law, as that is an essential part of our duties. In our spare time, it is necessary to digest new decisions involving constitutional issues (perhaps the most important function of the federal judiciary.) Because of the continuing vitality of diversity jurisdiction, we must also keep abreast of developments in the state law and even, as in the instant matter, divine the future intentions of the state supreme court as to a state law issue.

Of course, these diverse matters all arise in the context of a lawsuit, each of which involves a real dispute, with real people. We strive to dispense full, fair and swift justice (objectives that are somewhat contradictory in light of our growing case load.) We must accomplish these goals with the slim resources of a single judge and two law clerks, not a staff of hundreds as in some of the larger firms. It is not a productive use of the court's limited resources to verify that counsel have thoroughly and accurately informed us of the law that is applicable to their case.

We hasten to add that counsel need not lose any of his advocacy edge by so informing the court. Counsel may point out a contrary, non-precedential holding, explain to the court why it is wrongly decided, and thus steer the court in the right direction.[3] By doing so, counsel also gains the court's confidence that even though he is an advocate, he, too, is seeking the right result. That confidence can be a valuable asset during the course of protracted litigation, particularly when the court does not have time to fully digest all of the materials presented to it. Of course, none of this can happen if counsel sees fit to hide the law in his briefcase.

To summarize, we believe that we and counsel have the same overarching duty to see to the fair and just administration of the law. Counsel can aid the court in accomplishing its part of that duty without detracting from his advocacy role. By removing the applicable law as an area for gamesmanship, we can produce a better result than we could where counsel views hiding that law as simply another opportunity to gain an advantage over his opponent. Thus, we will continue to urge all counsel, not just the ones in this case, to disclose non-binding precedents to the tribunal.

In accordance with the foregoing, defendants' Motion for Reconsideration, Doc. No. 69, is DENIED.

---

3. Of course, if there is binding adverse precedent, counsel must either distinguish it, abandon that position, or clearly explain to the court that he is making the argument merely to preserve his right to challenge that precedent.