**Mary SCHALLIOL, Plaintiff,**

v.

**John FARE, Jr., et al. Defendants.**

**Louis SIMON, et al., Plaintiffs,**

v.

**The UNITED STATES of America, Defendants.**

**Nos. CIV.A. 01–224, CIV.A. 01–5671.**

United States District Court, E.D. Pennsylvania.

June 13, 2002.

Cathleen M. Devlin, Saul, Ewing, Remick and Saul, Philadelphia, PA, Harry A. Wilson, Jr., Wilson Kehoe & Winingham, Indianapolis, IN, H. Andrew Owen, Owen Gleaton Egan Jones & Sweeney, LLP, Atlanta, GA, D. Bruce Kehoe, Wilson, Kehoe & Winningham, Indianapolis, IN, Daniel S. Weinstock, Feldman, Shepard, Wohlgelernter & Tanner, Philadelphia, PA, for Plaintiff.

Kevin J. Ruane, Francis R. Gartner & Associates, Blue Bell, PA, David N. Zeehandelaar, Blank Rome Comisky & McCauley LLP, Philadelphia, PA, Joseph Michael Lamonaca, Chadds Ford, PA, J. Arthur Mozley, Mozley Finlayson & Loggins LLP, Atlanta, GA, for Defendants.

Terrence M. Healy, Rodney Patton, U.S. Dept. of Justice Torts Branch, Civil Div., Washington, DC, for Respondent.

## MEMORANDUM AND ORDER

KATZ, Senior District Judge.

Now before the court are two motions by the United States for the determination of the choice of law. Each motion pertains to one of the above-captioned lawsuits, both of which arise from a fatal plane crash.[1] In both suits, the United States is a defendant under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671 *et al.* (FTCA), for the alleged negligence of its air traffic controllers and its allegedly negligent publication of materials listing an approach to an airplane runway that was, in fact, not in service. Upon consideration of the parties' submissions, including the parties' stipulation of facts necessary to decide the conflicts of law issue, the court finds that Indiana substantive law applies to all claims pled against the United States under the FTCA. The court further certifies this ruling for immediate appeal pursuant to 28 U.S.C. § 1292(b).

*Background*

On January 18, 2000, while attempting to land at an airport near Somerset, Kentucky, an airplane collided with a guy wire on a microwave communications tower, and crashed.[2] All four people aboard were killed,[3] including the pilot John Fare, Sr. (Pilot Fare), and B. Kenin Hart (Passenger Hart), Dennis Schalliol (Passenger Schalliol) and Loy D. Thompson, IV, who were traveling on behalf of a real estate brokerage conglomerate known as Hart Corporation.

---

1. A third suit arising from the same incident and filed under Civ. No. 01–223 was consolidated with Civ. No. 01–224, and has been settled.

2. *See* Stipulation of Facts Necessary to Decide the Conflicts of Law Issue at ¶ 13.

3. *See id.* at ¶ 15.

While in flight, Pilot Fare contacted an air traffic controller at the Indianapolis Air Route Traffic Control Center,[4] who cleared him landing via the Simplified Directional Facility approach at Runway 4 (SDF 4) at the Somerset airport.[5] Pilot Fare also possessed an Instrument Approach Procedure (IAP) for SDF 4, which was published by the United States,[6] and allegedly contained information stating that that approach was in service. However, the navigational facility supporting the SDF approach was out of service indefinitely.[7] This was indicated on the Airport Directional Facility (AFD) published by the Federal Aviation Administration (FAA).[8]

In their various claims against the United States, plaintiffs contend that the publication of the IAP was negligent, and all parties agree that any such negligence occurred in Washington, D.C.[9] Plaintiffs also allege that the air traffic controllers were negligent, and all parties agree that any such negligence of the controllers, including any failure to monitor the aircraft or to supervise personnel, occurred in Indiana.[10] Finally, all parties agree that any negligence of Pilot Fare occurred in Ohio and Kentucky,[11] and that any negligence of the United States with respect to the publication of the AFD occurred in Washington, D.C.[12]

The parties to this case include plaintiff Mary Schalliol as personal representative of the estate of Dennis Schalliol (Plaintiff Schalliol), who brings claims of negligence against the United States under the FTCA, and also brings claims of negligence on the part of Pilot Fare against the estate of Pilot Fare (Defendant Fare) and against Pilot Fare's employer, Hart Corporation/Delaware Division[13] (Defendant Hart Delaware).[14] The estate of Pilot Fare, under separate representation, has also brought a cross-claim of negligence against the United States .(Cross–Plaintiff Fare).[15]

In a separate action, four personal representatives of the estate of B. Kenin Hart, his three children and his 88–year–old mother (collectively, the Simon Plaintiffs), also bring claims against the United States.

4. See id. at ¶ 11.

5. See id. at ¶ 12.

6. See id. at ¶ 7.

7. See id. at ¶ 8.,

8. See id. at ¶ 10.

9. See id. at ¶ 9.

10. See Stip. of Facts at ¶ 12.

11. See id. at ¶ 14.

12. See id. at ¶ 10. The parties' pretrial memoranda clearly emphasize the conduct of the Indiana controllers over the publications; furthermore, the memoranda also describe numerous alleged acts of the controllers that appear to be not dependent on the publications. See Pl. Schalliol's Pretrial Mem. at unnumbered 5–6; Pretrial Mem. of Defs. Fare/Hart Delaware at 4–5; Simon Pls.' Pretrial Mem. at 2; Pretrial Mem. of Cross–Pl. Fare at 5–9.

13. Hart Corporation/Delaware Division is a wholly-owned subsidiary of Hart Corporation, separately incorporated in Delaware, which held title to the airplane piloted by Fare and was used to transport employees of Hart National and its subsidiaries. See Stip. of Facts at ¶ 2.

14. Defendant Fare and Defendant Hart Delaware are jointly represented.

15. The estate of Pilot Fare also brought a counterclaim against Plaintiff Schalliol on the grounds that Passenger Schalliol "caused" the flight and was "the operator" of the flight, see Counterclaim on Behalf of the Estate of John Fare Against the Estate of Dennis Schalliol at ¶ 3, but the Pretrial Memorandum of Defendant Fare/Hart Delaware does not refer to any such counterclaim.

The United States has filed a separate motion for a determination of the choice of law in each of these cases, and in each motion seeks the application of Indiana substantive law to the claims pled against it under the FTCA. Plaintiff Schalliol, Defendants Fare/Hart Delaware, and the Simon Plaintiffs have each responded separately,[16] and each seek the application of Pennsylvania substantive law to these claims.[17]

*Discussion*

 The Third Circuit requires courts to engage in a complex choice-of-law analysis when FTCA claims are based on allegedly tortious conduct that occurred in more than one state. According to the Third Circuit,

> [t]he FTCA waives sovereign immunity and grants district courts jurisdiction over tort claims against the United States "under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*" 28 U.S.C. § 1346(b)(1) (emphasis added).... When a case involves multiple alleged acts or omissions occurring in more than one state, the FTCA, as construed by [*Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962) ], requires the District Court to engage in a complex conflict of laws analysis to determine which state law governs the jurisdictional inquiry.... Because *Richards* interpreted the "law of the place where the act or omission occurred" to mean the "whole law" of the state where the act or omission occurred, including that state's choice of law rules, a two

step choice of law analysis is required when multiple acts or omissions have occurred in more than one state. First, the court must select between the states' respective choice of law rules. *See Richards*, 369 U.S. at 11, 82 S.Ct. 585; *Ducey v. United States*, 713 F.2d 504, 509 n. 2 (9th Cir.1983); *Bowen v. United States*, 570 F.2d 1311, 1318 (7th Cir. 1978); James A. Shapiro, *Choice of Law Under the Federal Tort Claims Act: Richards and Renvoi Revisited*, 70 N.C.L.Rev. 641, 669–75 (1992). Second, the court must apply that state's choice of law rules to determine which state's substantive tort law applies. *See Richards*, 369 U.S. at 11, 82 S.Ct. 585, 7 L.Ed.2d 492; *Tyminski v. United States*, 481 F.2d 257, 265 (3d Cir.1973). Because of this bifurcated analysis, the state whose choice of law rules are selected in the first step may or may not be the same state whose substantive law is chosen in the second step.

Before proceeding to the conflict of laws analysis, it is prudent to ensure that there is not a "false conflict" in the underlying choice of law rules or the underlying contribution and indemnity law making it unnecessary to engage in this complex bifurcated analysis. *See Williams v. Stone*, 109 F.3d 890, 893 (3rd Cir.1997).

*Gould Electronics, Inc. v. United States*, 220 F.3d 169, 179–80 (3d Cir.2000). In sum, in this case the court must first determine whether there is a true conflict in the underlying choice of law rules of the states in which the act or omission of negligence occurred or in the substantive law that might apply; if there is such a

---

**16.** Cross–Plaintiff Fare, who is separately represented, did not respond to the United States' motion.

**17.** Although the court will not discuss in detail each party's arguments as to choice of law in this memorandum, comments in the margin will note where the court's conclusion is significantly in conflict with that of a party.

conflict the court must next determine which jurisdiction's choice-of-law rules apply; and finally the court must determine which jurisdiction's substantive rules apply. *See id.*

In this case, the allegedly tortious "acts or omissions" of the United States occurred both in Washington, D.C. and perhaps Oklahoma, where the IAP and AFD were published, and also in Indiana, where the air traffic controllers who instructed Pilot Fare in landing were located.[18] With respect to the choice-of-law rules of these jurisdictions, Indiana employs a modified *lex loci delicti* test that applies the substantive law of the place where the tort was committed, that is, where the last event necessary to make an actor liable for the alleged wrong takes place, *Hubbard Manufacturing Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind.1987), whereas D.C. employs a governmental interest test, *see Raflo v. United States*, 157 F.Supp.2d 1, 4–5 (D.D.C.2001)[19], and thus there exists a true conflict between the two.[20] *See generally id.* at 8 (finding true conflict between Virginia's *lex loci delicti* approach and District of Columbia's governmental interest approach).

As to whether there is a true conflict in the potentially applicable substantive law, a court must first determine which substantive law might apply. As discussed *infra*, under Indiana choice of law rules, the most likely jurisdictions are Indiana and D.C.; under the D.C. "interest" analysis, the possible jurisdictions are, at minimum, D.C., Indiana and Pennsylvania, the latter two being the only jurisdictions whose substantive law are endorsed by any party in this case.[21] There is a true conflict as to the substantive law, since Indiana and Pennsylvania embrace comparative fault, that is, proportional allocation of fault,[22] whereas D.C. follows the

**18.** The court considers only the choice of law rules of D.C. and Indiana, as no party seeks application of any law of Oklahoma and the record does not strongly support it as a place of tort in this case.

**19.** The D.C. test requires a court to 1) identify the governmental policies underlying the applicable laws, and 2) determine which state's policies would be most advanced by having its law applied to the facts of this case. *See Raflo*, 157 F.Supp.2d at 4. To evaluate the state with the stronger interest, four factors are considered: 1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and 4) the place where the relationship is centered. *See id.* at 5.

**20.** In contrast, Plaintiff Schalliol disagrees that there is a true conflict between Indiana and D.C.'s choice of law rules.

**21.** Sweeping broadly, Kentucky, New Jersey, New York, Delaware, and possibly Ohio and Oklahoma may also have an interest in this case, as the crash occurred in Kentucky, neg-ligence may have occurred in Oklahoma with respect to the IAP, the pilot's negligence is alleged to have occurred in Ohio and Kentucky, and each of the other states is the residence of either a decedent or an estate representative plaintiff. However, the parties do not argue that the substantive law of any of these states apply, and an independent review supports this approach.

**22.** *See Mendenhall v. Skinner and Broadbent Co., Inc.*, 728 N.E.2d 140, 142 (Ind.2000) (describing Ind.Code § 34–51–2–1 as "modify[ing] the common law rule of contributory negligence under which a plaintiff was barred from recovery where he was only slightly negligent ... through proportional allocation of fault, ensuring that each person whose fault contributed to cause injury bears his or her proportionate share of the total fault contributing to the injury."); *Hughes v. Seven Springs Farm, Inc.*, 563 Pa. 501, 504 and n. 1, 762 A.2d 339 (Pa.2000) (under Pennsylvania's statutory scheme, "comparative negligence is the general rule")(citing Comparative Negligence Act, 42 Pa. Cons. Stat. § 7102(a)-(b)). Whether rules of comparative or contributory negligence apply is relevant to the United

rule that contributory negligence will bar recovery except in cases where the last clear chance doctrine applies.[23] Further-

more, Indiana has barred joint and several liability by statute,[24] whereas D.C. and Pennsylvania embrace it.[25] Also, Indiana

States with respect to the claim of Cross–Plaintiff Fare against the United States. However, Plaintiff Schalliol argues that any conflict as to contributory negligence is irrelevant to its claims against the United States.

**23.** *See Wingfield v. Peoples Drug Store, Inc.*, 379 A.2d 685, 687 (D.C.1977) ("[C]ontributory negligence bars a plaintiff's recovery"); *Washington Metropolitan Area Transit Authority v. Johnson*, 726 A.2d 172, 174–176 (D.C. 1999) ("The last clear chance doctrine enables a plaintiff to recover despite [her] contributory negligence," and "there is widespread authority for the principle that when the plaintiff and the defendant are equally at fault, 'the law leaves both parties where it finds them.'").

**24.** The court finds that if Indiana substantive law were to apply in this case, the applicable Indiana law would be the Indiana Comparative Fault Act, Ind. Code § 34–4–33–1 *et seq.* (ICFA). The Simon Plaintiffs claim that the ICFA cannot apply to the United States defendant because that act specifically excludes governmental entities. *See id.* § 34–51–2–2 ("This Chapter does not apply in any manner to tort claims against governmental entities."). The Simon Plaintiffs further claim that because the governmental conduct at issue in this case has no "private analog," the FTCA requires the court to look not to the ICFA, but to the state law applicable to governmental conduct. *See* Simon Pls.' Resp. at 10–13 (arguing that this court should apply, instead of the ICFA, "the pre-existing principles which remain applicable in actions against governmental entities, including the doctrine of joint and several liability."). While the plaintiffs' general underlying premise is correct—that alleged government conduct without a "private analog" will be analyzed under state law applicable to governmental entities rather than to private persons, *see id.* at n. 15 and cases cited therein—no case has been cited by the parties or found by this court in which federal employees responsible for air traffic were deemed to be without private analog in this context. More appropriate in this context is the United States Supreme Court's holding that the Coast Guard could be held liable under the FTCA for negligent operation of a lighthouse,

since "it is hornbook tort law that one who undertakes to warn the public of danger and thereby induces reliance must perform his 'good Samaritan' task in a careful manner." *Indian Towing Co. v. United States*, 350 U.S. 61, 64–65, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (FTCA liability not predicated on the "presence or absence of identical private activity"); *see also generally Carter v. United States*, 982 F.2d 1141, 1144 (7th Cir.1992) ("The national government is never situated identically to private parties. Our task is to find a fitting analog under private law.").

Without attempting to exhaustively detail the scope of the "private analog" requirement in this context, the court notes that the cases applying the doctrine cited by the Simon Plaintiffs are generally distinguishable from the case at bar since they involve, *inter alia*, military personnel and government employees employed in law enforcement functions and endowed with police powers unavailable to private persons. *See Indian Towing*, 350 U.S. at 69, 76 S.Ct. 122 (military personnel's relationship with the government is "governed exclusively by federal law") (citing *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950)); *Rogers v. United States*, 902 F.2d 1268, 1270 (7th Cir.1990) ("[T]here is no private analog to the relationship between the government and a service member."); *Louie v. United States*, 776 F.2d 819, 825 (9th Cir.1985) (military police); *Hetzel v. United States*, 43 F.3d 1500, 1503 (D.C.Cir. 1995) (Drug Enforcement Agency); *Caban v. United States*, 728 F.2d 68, 74 (2d Cir.1984) (immigration officers "accorded a special status by law" by virtue of power to detain people).

**25.** *Compare Gray v. Chacon*, 684 F.Supp. 1481, 1483 (S.D.Ind.1988) ("[T]he Comparative Fault Act abolished joint and several liability and substituted a scheme of liability proportionate to fault"), *with National Health Laboratories, Inc. v. Ahmadi*, 596 A.2d 555, 557 (D.C.1991) ("[O]rdinarily, when two tortfeasors jointly contribute to harm to a plaintiff, both are potentially liable to the injured party for the entire harm.") *and* 42 Pa. Cons. Stat. §§ 8322, 8324 (providing for joint and several liability).

does not permit survivor claims in addition to wrongful death claims in cases involving negligence, *see* IND. CODE § 34–9–3–4, and for wrongful death cases Indiana awards damages including net lost earnings of the decedent, *see id.* § 34–23–1–1; *Elmer Buchta Trucking, Inc. v. Stanley*, 744 N.E.2d 939, 943 (Ind.2001) (lost earnings minus maintenance),[26] and damages for nonpecuniary loss of love and companionship, *see* IND. CODE. § 34–23–1–1, 34–23–1–2, but specifically prohibits awards of punitive damages or for pain and suffering, *see id.* § 34–23–1–2. Furthermore, in Indiana lost earnings awards are only provided to the decedent's spouse and to dependent children or dependent next of kin. *See id.* § 34–23–1–1. In contrast, Pennsylvania permits wrongful death claims as well as survivor claims, *see, e.g., Stecyk v. Bell Helicopter Textron, Inc.*, 53 F.Supp.2d 794, 798 n. 4 (E.D.Pa.1999), and although damages in Pennsylvania also may be based on the decedent's net earnings until death, *see Incollingo v. Ewing*, 444 Pa. 263, 444 Pa. 299, 282 A.2d 206 (1971), significantly, awards may also be given for pain and suffering, *see In Re Consolidation Coal Co.*, 296 F.Supp. 837 (W.D.Pa.1968), and furthermore in a case such as this where there are no minor dependents, damages may be awarded to the decedent's adult, nondependent children. *See* 42 PA. CONS. STAT. § 8301; *Burchfield v. M.H.M. Partnership*, 43 Pa. D. & C. 4th 533, 542–43 (Pa.Com.Pl.1999) (in wrongful death action, loss of services damages are recoverable by damaged adult, as well as by a minor); *Krause v. B & O Railroad*, 33 Pa. D. & C.3d 458, 462 (Pa.Com.Pl.1983) (settlement proceeds of a survival action to be distributed without regard to pecuniary loss). Finally, D.C. permits wrongful death damages for loss of support to spouses and next of kin, as well as survivor claims, but excluding pain and suffering. *See* D.C. CODE §§ 16–2701, 12–101; *see also Strother v. District of Columbia*, 372 A.2d 1291, 1295 (D.C.1977). Thus, there exist true conflicts among all three jurisdictions that must be resolved.

According to *Gould*, after establishing a true conflict the court must next "select the choice of law rules of the state where the 'acts or omissions' occurred, not where the injury occurred." *Gould*, 220 F.3d at 181. *Gould* delineated five different approaches that have been taken in choosing between "conflicting choice of law rules when the alleged acts or omissions occur in more than one state." *Id. Gould* did not express a preference for any of the five approaches, but found that because under the facts of that case one of the approaches did not apply and the remaining four led to the application of the choice of law rules of Indiana, Indiana's law was indeed appropriate. *Id.* at 183.

"In the first approach, when the injury can be parsed by the acts or omissions in the different states, one court applied the choice of law rules on an act-by-act basis, applying the relevant state's choice of law rules for each act or omission." *Gould*, 220 F.3d at 182 (citing *Kohn v. United States*, 591 F.Supp. 568, 572 (E.D.N.Y. 1984)). That approach, however, required that "each act by the [defendant United States] Army was a distinct tort that, absent the others, could have caused an emotional distress injury," *Gould*, 220 F.3d at 183, and here, as in *Gould*, this approach is unworkable because the plaintiffs' injuries are "indivisible and cannot be parsed based on the separate alleged acts by the united States."[27] *Id.*

---

**26.** The Simon Plaintiffs dispute that lost earnings may be recovered under Indiana law.

**27.** Defendants Fare/Hart Delaware argue that this approach would lead to application of Indiana law as to the controllers' conduct and

A second approach is to "elect the choice of law rules of the place of the last act or omission having a causal effect." *Id.* (citing *Bowen v. United States,* 570 F.2d 1311, 1318 (7th Cir.1978))(punctuation omitted). Here, the last act or omission having a causal effect clearly was committed by the air traffic controllers in Indiana.

A third approach is to elect the choice of law rules of "the place of the act or omission having the most significant causal effect." *Gould,* 220 F.3d at 182 (citing *Bowen,* 570 F.2d at 1318 (punctuation omitted)). In *Bowen,* "the plaintiff sued the Federal Aviation Administration for failure to advise the pilot of icy conditions at various points along the route in Arkansas, Illinois, and Indiana," *id.* (citations omitted), and the plane ultimately crashed while attempting to land with the instructions of Indiana air traffic personnel. Despite the numerous alleged acts of negligence in different states, the court held that Indiana law applied because "the close relationship of the Indiana events to the crash itself and the fact that what was said there could have prevented the crash seem to us to give that state the edge as the situs of the acts or omissions having the greatest causal significance." *Bowen,* 570 F.2d at 1318. In this case, as in *Bowen,* a direct nexus exists between the conduct of the controllers and the crash, giving Indiana the "edge" as the site of the conduct having the greatest causal significance.[28]

"Under a fourth approach, the court selects the choice of law rules of the state in which 'physical acts' could have prevented the injury." *Gould,* 220 F.3d at 183 (citing *Ducey v. United States,* 713 F.2d 504, 509 n. 2 (9th Cir.1983)). In *Ducey* and in *Gould*'s application of *Ducey,* this approach helped to choose between a site where physical acts caused the tort and a site where the decision to implement those physical acts was made. *Ducey,* 713 F.2d at 509 n. 2 (numerous alleged omissions "may have stemmed in part from decisions made in San Francisco, California" but "could have been prevented only by the doing of such physical acts as the posting of signs, the erection of barbed wire, and the tearing up of boat slips and trailer spaces in Nevada."); *Gould,* 220 F.3d at 183 (decisions were made in Pennsylvania to construct and operate plant located in NY). Here, since physical acts in both Indiana and D.C. could have prevented the tort, this approach is indeterminate.

"A fifth approach was taken by the District of Columbia Circuit Court of Appeals, which made a choice of choice of law based on where the 'relevant' act or omission occurred." *Gould,* 220 F.3d at 183 (citing *Hitchcock v. United States,* 665 F.2d 354, 359 (D.C.Cir.1981)). In *Hitchcock,* a diplomat's wife developed paralysis due to a rabies vaccination administered to her by the government in preparation for a job relocation to Argentina. *See Hitchcock,* 665 F.2d at 359–60. The court held that the "relevant" negligent act was the policy decision made in D.C. to vaccinate Argentina personnel without providing them with warnings or other information, and not the inoculation itself administered by a nurse in Virginia who was given little supervision and no directions to supply warnings or other information. *See id.* Therefore, the "locus" of the negligent conduct was D.C., not Virginia. *Id.* The relationship of the administrating nurse and the policy-makers in D.C. is clearly different from that of the air traffic controllers in Indiana to

---

to application of D.C. law as to the publication of the materials there.

**28.** In contrast, Defendants Fare/Hart Delaware disagree and claim that this approach is indeterminate.

chart makers in D.C. in this case, as the former involved non-negligent administration of a negligent policy set by others, and the latter involves two independent actors each alleged to be negligent in their own right. Thus, this approach is indeterminate.

In sum, the court finds that of the five approaches set forth in *Gould,* one is inap-plicable, two are indeterminate on the present record, and two point to the application of Indiana's choice of law rules. Therefore, the court will apply Indiana's choice of law rules.[29]

Next, the court looks to these rules to determine which jurisdiction's substantive law applies.[30] As noted previous-

**29.** In contrast, defendants Fare/Hart Delaware would apply either Indiana or D.C. choice of law rules and under either would apply Pennsylvania substantive law.

**30.** The court will apply the substantive law of one jurisdiction to all aspects of the FTCA claims. However, Plaintiff Schalliol and the Simon Plaintiffs argue for application of the principle of depecage, that is, "the process of applying [substantive] rules of different states on the basis of the precise issue involved." *In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979,* 644 F.2d 594, 610–11 (7th Cir.1981) (applying depecage under Illinois choice of law principles). In this case, these plaintiffs argue that the application of depecage under Indiana choice of law rules could result in the application of Pennsylvania law on issues of damages, even if Indiana law applies on issues of liability. Such a result would be significant because there is a true conflict between Indiana and Pennsylvania law with respect to damages. *See supra.*

Depecage is a concept referred to in Section 145 of the Restatement (Second) of the Conflicts of Laws, which states that in choosing between different states' choice of law principles, the relevant factors "are to be evaluated according to their relative importance with respect to the particular issue." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145. Depecage is more explicitly endorsed in comment (d) to Section 145, which states that "courts have long recognized that they are not bound to decide all issues under the local law of a single states, but instead each issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states." *Id.* at cmt. (d). As described by a district court applying depecage under Illinois choice of law rules in another plane crash case, "it is important to understand that the search for the applicable law is not a general one, but rather it is one

that takes proper notice of the fact that the significance of a state's relationship to a particular aviation disaster may vary as a function of the particular issue being presented." *See In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994,* 926 F.Supp. 736, 740 (N.D.Ill.1996); *see also In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colorado, on Nov. 15, 1987,* 720 F.Supp. 1445, 1448 n. 3 (D.Colo.1988) (noting that depecage "is widely applied to the multifaceted issues involved in aviation litigation").

While Indiana has adopted the factors enumerated in Section 145, the United States argues that no Indiana court has specifically endorsed or applied the concept of depecage. Furthermore, the United States argues, while Section 145 factors must be "evaluated according to their relative importance with respect to the particular issue," Indiana courts have interpreted this requirement to mean that the factors must be evaluated according to each separate legal *claim* or theory of recovery, and not according to the separate issues of liability and damages raised by any such legal claim or theory of recovery. For example, *Hubbard Manufacturing Co., Inc. v. Greeson,* 515 N.E.2d 1071 (Ind.1987), a seminal choice of law case, evaluated the Section 145 factors in terms of how they related to the plaintiff's "two theories of recovery [which] relate[d] to the manufacture of the lift in Indiana," *id.* at 1074, but did not question the application of Indiana law to damages as well as liability, even though Illinois was the site of the job-related death and of the job itself, as well as the provider of workmen's compensation to the survivors.

This court agrees with the United States that Indiana courts, having never before explicitly applied depecage, would not apply depecage in the case at bar, and declines to infer a significant choice of law principle into Indiana law where no party has provided any reason to believe that the Indiana courts would do so. Although the Simon Plaintiffs

ly, Indiana employs a modified *lex loci delicti* test, which applies the substantive law of the jurisdiction where the tort was committed, that is, where the last event necessary to make an actor liable for the alleged wrong takes place. *Hubbard*, 515 N.E.2d at 1073. Generally, in Indiana wrongful death or injury cases, the site of the tort's commission or of the "last event necessary" is the place where the death occurred, *see Lambert v. Yellowbird, Inc.*, 496 N.E.2d 406, 409 (Ind.Ct.App.1986), which in this case is the site of the crash and resulting deaths, Kentucky. However, the inquiry does not end here, as "[i]n

those instances where the place of the tort bears little connection to the legal action, this Court will permit the consideration of other factors such as: 1) the place where the conduct causing the injury occurred; 2) the residence or place of business of the parties; and 3) the place where the relationship is centered. Restatement (Second) of Conflicts of Laws § 145(2) (1971). These factors should be evaluated according to their relative importance to the particular issues being litigated." *Hubbard*, 515 N.E.2d at 1073.[31] Thus, the court must ask whether Kentucky bears "little connection to the legal action," and if so,

cite numerous cases in support of the application of depecage under Indiana law, *see* Simon Pls.' Resp. to U.S. Mtn. at 31–32, Pl. Schalliol's Br. in Resp. to U.S. Mtn. at 6–7, but none are persuasive. In *Estate of Sullivan v. United States*, 777 F.Supp. 695 (N.D.Ind.1991), the Indiana court applied depecage under Arizona choice of law rules, not Indiana choice of law rules. In *Jean v. Dugan*, 814 F.Supp. 1401, 1409–10 (N.D.Ind. 1993), *aff'd*, 20 F.3d 255, 261–62 (7th Cir. 1994), the district court and the Seventh Circuit applied depecage with respect to separate legal claims, *i.e.*, claims of wrongful termination and a claim of defamation, not to separate issues within each of those claims. In *Judge v. Pilot Oil Corporation*, 205 F.3d 335, 337 (7th Cir.2000), the court did not conduct separate choice of law analyses on the issues of "conduct" and "justification," as claimed by the Simon Plaintiffs, *see* Simon Pls.' Resp. at 31, but clearly viewed those issues as governed by the same choice of law analysis, and indeed those issues appear inseparable. In *Consolidated Rail Corp. v. Allied Corp.*, 882 F.2d 254, 256–58 (7th Cir. 1989), the court directed its choice of law analysis solely to the issue of contribution among joint tortfeasors because that was the only issue before the court, since the liability issues had already been settled. Finally, in *In the Matter of Estate of Bruck*, 632 N.E.2d 745, 748 (Ind.Ct.App.1994), where the only issue to be litigated was the appropriate distribution of estate proceeds recovered through settlement, the court found that in the absence of Indiana law permitting the type of recovery contained in the settlement, Ohio law must

apply on the issue of distribution. Although one of the *Bruck* parties encouraged the court to apply depecage to separate the issues of recovery and distribution, and to apply Indiana intestate law to the distribution, the Indiana Court of Appeals declined to do so. *Id.* While the *Bruck* court noted that depecage analysis "may indeed be relevant where statutory schemes conflict," *id.* at 749, this court does not find this dictum sufficient to control in this case.

**31.** The *Hubbard*/Restatement factors are not exclusive or controlling. In one case, the Seventh Circuit did not consider each of these three factors independently, but rather described the three *Hubbard* factors as collectively "focus[ing] on which jurisdiction has the most significant contacts," and ultimately applied the law of the jurisdiction with "the more significant contacts with and interest in this action." *Autocephalous Greek–Orthodox Church of Cyprus v. Goldberg and Feldman Fine Arts, Inc.*, 917 F.2d 278, 287 (7th Cir. 1990). At least one Indiana court defined a fourth factor that it found to be more relevant to the specific facts of the case before it than any of the three *Hubbard*/Restatement factors. *See In the Matter of Estate of Bruck*, 632 N.E.2d 745, 748 (Ind.Ct.App.1994) (where only issue before the court was proper distribution of estate proceeds recovered through settlement, court determined that most "relevant" factor was that Ohio law permitted such recovery and provided for its distribution, whereas Indiana law did not; thus, Ohio law applied).

consider the enumerated Restatement factors according to their importance to the alleged negligence of the air traffic controllers in Indiana and of the D.C. publishers.

It seems clear that Kentucky has "little connection to the legal action" concerning the FTCA claims against the United States's air traffic controllers and chart publishers. Although the deaths occurred in Kentucky, the pilot's negligence may have occurred in Kentucky, and Kentucky was the intended destination of the plane that day, none of these facts have any bearing on whether the United States was negligent. In *Hubbard*, 515 N.E.2d at 1074, Illinois was the site of a death allegedly caused by a faulty mechanical lift, of the inquest, and of decedent's employment at the time of death, as well as the provider of workmen's compensation to decedent's family. However, these factors were "insignificant" since "none ... relates to the wrongful death action," which was premised on "two theories of recovery relat[ing] to the manufacture of the lift in Indiana." *Id.* at 1074; *see also Jean v. Dugan*, 814 F.Supp. 1401, 1409–10 (N.D.Ind.1993) (site of alleged wrongfully terminated was Illinois, but Illinois had "little significant connection to this legal action because nearly every action leading up to [plaintiff]'s allegedly tortious termination occurred in Indiana."), *aff'd on other grounds*, 20 F.3d 255 (7th Cir.1994) (choice of law as to wrongful termination claims not contested on appeal). Here, no element of the tort allegedly committed by the United States occurred in Kentucky, nor do any of the other connections of Kentucky have any bearing upon those alleged torts.

Thus, the court turns to consideration of other factors, including those specified in *Hubbard*. As to "the place where the conduct causing the injury occurred," the alleged negligence of the United States occurred in both Indiana and D.C., but the conduct most directly affecting the plane's landing clearly occurred in Indiana. Furthermore, the Indiana controllers were the only governmental actors with direct contact with, and who had immediate supervision and control over, the pilot and the plane. As to "the residence or place of business of the parties," they are various—Indiana (Plaintiff Schalliol, and perhaps the place of business of the United States along with D.C.), Pennsylvania (three of four Simon Plaintiffs), New York (fourth Simon Plaintiff), Delaware (Defendant Fare/Cross–Plaintiff Fare and Defendant Hart Delaware),[32] and all states or no state (residency of the United States).[33] Although the sheer number of contacts is greatest in Pennsylvania, all three contacts are those of representatives of a single estate plaintiff. As to the place where the relationship is "centered," the decedents' relationship to the government was based on the fact that as plane travelers they were subject to the supervision of air traffic controllers and guided by the government's air traffic publications, so that any relationship arguably was centered, if anywhere at all, to the regulatory acts in Indiana or D.C., or perhaps to the passengers' employers in Pennsylvania or Delaware.[34, 35] Finally, while the *Hubbard*/Re-

**32.** *See* Stip. of Facts ¶¶ 2, 16.

**33.** *Compare, e.g., Clawans v. United States*, 75 F.Supp.2d 368, 374 (D.N.J.1999) (noting that the United States was not a resident of a particular state), *with United States v. Whitcomb*, 314 F.2d 415, 417 (4th Cir.1963) (finding that the United States is a resident of every state).

**34.** Passenger Hart and Passenger Schalliol worked for Hart Corporation, which was a Pennsylvania corporation and had its principal place of business in Pennsylvania. *See*

statement factors considers the domicile of the parties and not of the decedents, Plaintiff Schalliol and the Simon Plaintiffs correctly argue that a state has an interest in the compensation of its residents' injuries, *see, e.g., In re Aircrash Disaster Near Roselawn, Ind. on Oct. 31, 1994,* 948 F.Supp. 747, 758 (N.D.Ill.1996) (deciding choice of law as to compensatory damages alone), and here two decedents, Passenger Hart and Passenger Schalliol, were residents of Pennsylvania.[36] However, liability as well as compensation is at stake in this choice of law determination, and the *Hubbard*/Restatement factors point to Indiana as the place of the immediate injury-causing conduct, as the domicile of Plaintiff Schalliol, and as the possible place of business of the United States in the context of its control and supervision over the plane's landing. Although it is a close question, the court finds that Indiana bears the "edge" as the jurisdiction with the most significant contacts to the negligence claims against the United States. *See Cutshall v. Ford Motor Co.,* 719 F.Supp. 782, 784 (S.D.Ind.1989) (under Indiana law, Missouri law had most significant contacts where it was the place of tort, place of business of defendant, and place of direct contact between plaintiff and defendant; Indiana law did not apply, although it was residence of tort plaintiffs and also of tort victim's employer, which was responsible for bringing tort victim and defendant together).

■ This court further certifies this issue for immediate appeal pursuant to 28 U.S.C. § 1292(b), which requires that 1) the issue involve a controlling question of law 2) as to which there is substantial grounds for difference of opinion, and that 3) an immediate appeal of this order may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Smith v. Scripto–Tokai Corp.,* 178 F.Supp.2d 477, 479 (W.D.Pa.2001). The choice of law determination is a controlling question of law in that reversal of this decision by the Court of Appeals could result in the application of different jurisdiction's substantive law on the primary issues of liability and/or damages. *See Trotter v. Perdue Farms, Inc.,* 168 F.Supp.2d 277, 288 (D.Del.2001) ("'A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal.'")(citing *Katz v. Carte Blanche Corp.,* 496 F.2d 747, 754 (3d Cir.1974) (en banc)). Additionally, there is substantial ground for a difference of opinion as to the appropriate application of the complex, multi-step analyses of *Gould* and *Hubbard.* Furthermore, an immediate appeal may materially advance the ultimate termination of the litigation by providing the parties with certainty as to the scope of possible financial exposure if the case were to proceed to trial, which differs greatly depending on whether Indiana or Pennsylvania law is applied.

The proceedings in this court are stayed.

An appropriate Order follows.

### ORDER

**AND NOW,** this 13th day of June, 2002, it is **ORDERED** as follows:

---

Stip. of Facts ¶¶ 1, 5, and 6. Pilot Fare was employed by Hart Delaware, a Delaware division of Hart Corporation. *See id.* at ¶¶ 2 and 3.

**35.** Defendant Fare/Hart Delaware disagrees, and emphasizes that the flight plan was filed with the FAA in Pennsylvania, that the "Ap-

proach Plate subscription" was received in Pennsylvania, and that the flight took off and was intended to return to Pennsylvania.

**36.** *See* Stip. of Facts ¶ 5, 6. Pilot Fare, whose estate cross-claims against the United States, was a resident of New Jersey. *See id.* at ¶ 3.

1. Upon consideration of the United States' Motion for Determination of Choice of Law in Civ. No. 01–224, and the responses and reply thereto, the motion is **GRANTED**;

2. Upon consideration of the United States' Motion for Determination of Choice of Law in Civ. No. 01–5671, and the responses thereto, the motion is **GRANTED**;

3. The issue of the choice of law is certified for immediate appeal. *See* 28 U.S.C. § 1292(b) (conferring discretion on the Court of Appeals to exercise jurisdiction if application is made within ten days after the entry of the order); and

4. The proceedings in this court are stayed pending appeal.